| | |
|---|---|
| RICHARD J. BOSSE, JR.<br>40 Utz Drive<br>Hanover PA 17331 | * IN THE<br><br>* CIRCUIT COURT |
| *Plaintiff* | * OF |
| v. | * MARYLAND |
| BALTIMORE COUNTY,<br>MARYLAND, and<br><u>Serve On:</u><br>  John E. Beverungen,<br>  County Attorney<br>  Old Court House<br>  400 Washington Avenue<br>  Towson, Maryland, 21204 | * FOR<br><br>* BALTIMORE COUNTY |
| and | |
| JAMES P. O'NEILL,<br>*Individually, and as Director of the*<br>Baltimore County Department<br>of Corrections<br>720 Bosley Avenue<br>Towson, MD 21204 | |
| DANIEL SWAIN<br>*Individually, and in his Official Capacity*<br>Baltimore County Department<br>of Corrections<br>720 Bosley Avenue<br>Towson, MD 21204 | Case No.: _____ |
| *Defendants* | |

*************************************************************************

## COMPLAINT AND DEMAND FOR JURY TRIAL

Richard J. Bosse, Jr., Plaintiff, by John B. Stolarz, his attorney, sues Baltimore County, Maryland, James P. O'Neill and Daniel Swain, and says:


EXHIBIT A

1. The Baltimore County Department of Corrections is an agency of Defendant Baltimore County created under § 504 of the Baltimore County Charter.

2. Baltimore County Department of Corrections operates Baltimore County's Detention Center which employs well in excess of 50 employees, and has done so in excess of 40 weeks.

3. Defendant Baltimore County is an employer within, and subject to, the provisions of the Family Medical Leave Act (FMLA), 29, U.S.C. § 2615, *et seq.*

4. The Plaintiff, Richard J. Bosse, Jr. is a full time employee of Baltimore County, Maryland, in the position of a Correctional Officer stationed at Baltimore County's Department of Corrections, located at 720 Bosley Avenue, Towson, MD 21204.  Plaintiff began his employment with Baltimore County in 1994.

5. Defendant James P. O'Neill, is the Director of the Baltimore County Department of Corrections. He is sued in his individual and official capacity.

6. Defendant Daniel Swain is an employee of Defendant Baltimore County Department of Corrections and is the Plaintiff's supervisor. He is sued in his individual and official capacity.

7. Defendant James P. O'Neill is the individual responsible for establishing and maintaining the leave, promotion, and disciplinary rules and regulations at the Baltimore County Department of Corrections.

8. The Plaintiff has a seven-year-old son, Eric Bosse, who has chronic moderate to severe asthma. The minor son's physician has certified, and this had been furnished to Plaintiff's employer, that Eric Bosse's medical condition requires frequent episodic visits to the physician's office for care. Eric Bosse's condition also requires a parent to be present at home frequently to administer nebulizer treatments, bronchial dilators, antibiotics, and chest physio-therapy to the minor child.

9. The Plaintiff, together with his wife, administer nebulizer treatments, bronchial dilators, antibiotics, and chest physio-therapy to the minor child, and take the child to physician visits.

10. The Plaintiff has provided Defendant Baltimore County appropriate documentation and has been authorized to use intermittent leave under the FMLA for attendance at the son's medical appointments or to care for his son as prescribed by the child's physician's medical certification, on file with the Defendant employer.

11. In spite of the fact that the Plaintiff provided the requisite documentation and was authorized to take intermittent FMLA leave to take his minor son to physician visits, and to provide home medical care, Defendants have imposed unlawful restrictions on his use of FMLA, or have made unnecessary and burdensome requests making the Plaintiff's use of FMLA unduly difficult.

12. Defendants unlawful and burdensome restrictions have also made the Plaintiff's use of the FMLA for Plaintiff's own benefit, unduly difficult.

**FMLA Complaints Filed by the Plaintiff with the U.S. Dept. Of Labor**

13. On, or about, June 22, 2000 the Plaintiff filed a complaint with U.S. Department of Labor complaining that Baltimore County has not established an FMLA leave policy, and had not posted notice of the availability of an FMLA leave policy at its facilities, as required by federal law. The Plaintiff further complained that there were numerous occasions where he could have used the FMLAS for his own asthmatic condition and the birth of his son but instead had to use personal sick leave which was then held against him in the form of verbal counseling, an administrative hearings, and negative performance evaluations. The U.S. Department of Labor substantiated the Plaintiff's complaint and on or around November 15, 2000 Baltimore County agreed to reverse all of the disciplinary actions taken against the Plaintiff.

14. On, or about, August 23, 2006, the Plaintiff filed another complaint with the U.S. Department of Labor because he was suspended for three days for taking leave that was protected under the FMLA. More particularly, the Plaintiff sought to take FMLA to avoid required overtime at the end of his shift to care for his son at home who was having medical difficulties that week due to weather conditions. The U.S.

Department of Labor substantiated the complaint. The U.S. Department of Labor held the matter in abeyance because of a pending grievance. The hearing officer reversed the suspension.

15. On, or about, February 6, 2008, the Plaintiff filed another complaint with the U.S. Department of Labor alleging that the Defendant disciplined the Plaintiff for taking leave sanctioned by the FMLA. More particularly the Plaintiff received disciplinary action in the form of written counseling because the Plaintiff took FMLA leave to come into work late, after following Baltimore County procedures and phoning at least one hour in advance, to give his son medical treatments for his asthma. The U.S. Department of Labor substantiated the Plaintiff's complaint and Defendant agreed to remove the disciplinary action from Plaintiff's personnel file.

### Defendants Unlawfully Considered the Plaintiff's FMLA Leave in Making its Decision Whether to Promote the Plaintiff.

16. Plaintiff repeatedly applied for promotion to Corporal, the last two times being in March 2008 and April of 2007.

17. Defendants made it very clear to the Plaintiff, and other employees, that absenteeism was a major factor in determining whether an employee would be promoted.

18. Defendants' also made it very clear that the Plaintiff's absenteeism, comprised mostly of FMLA leave, was a major factor in Defendants' decision not to promote him.

19. Approximately a week after the Department promoted thirty officers to corporal 2005 the Plaintiff was in the Officer's dining room for his dinner break and Sergeant Luckett, who was on the interview board for the corporal position, told the Plaintiff that he was in the top half of the officers that were recommended for Corporal and that he should have been promoted but Sergeant Luckett stated that Defendant O'Neill promoted officers that were not recommended by the interview

board and the only thing that was holding him back was Plaintiff's unscheduled leave.

20. On numerous occasions over the past two years, the last being in March 2008, Captain John Berry, Plaintiff's supervisor told the Plaintiff that he would be promoted if he would clean up his unscheduled leave record. The Plaintiff advised Captain Berry that Plaintiff's unscheduled leaves were primarily authorized under the FMLA because his child was sick and he needed to be there for the child's treatments. Captain Barry then told the Plaintiff to try his best to clean it up.

21. In February of 2008, Lieutenant Whitehead advised the Correction Officers during several Sunday roll calls that it does not matter what you know about the job, but what matters is that you come to work, and that was the only way to get promoted while working for the Department of Corrections.

22. On April 2, 2008 Lt. Reineck advised the Plaintiff that FMLA leave was included with other leave in making promotions and the Department.

23. On April 4, 2008, during roll call, Captain Berry stated that attendance played a role in a lot of things around the jail such as shift transfers, permanent postings, and promotions.

24. On March 24, 2008 Plaintiff asked Captain Berry to review and copy his shift file. Captain Berry stated "I don't think that is a good idea with what you have going on with Mister O'Neill." Captain Berry then denied him access to the file. Plaintiff took Captain Berry's comment to refer to Plaintiff's ongoing FMLA complaints.

25. On April 15, 2008 the Plaintiff once again spoke with Captain Berry in reference to reviewing his leave file. Captain Berry still denied the Plaintiff access stating "what you have going on between you and O'Neill is between you and Mister O'Neill and I am not going to get on his bad side by letting you access your file."

26. On May 12, 2008 Plaintiff again asked Captain Berry for permission to review his shift file, but Captain Berry referred the Plaintiff to Major Charles Ittner. After the Plaintiff contacted him, Major Ittner instructed Captain Berry to make the

shift file available to the Plaintiff. Reviewing a shift file is routine matter which all officers are granted ready access, the Plaintiff understood Captain Berry's actions as intended to make more difficult, the Plaintiff's leave inquiries.

27. On April 28, 2008 the Lt. Bryan Mattriccinni told me that Defendant James O'Neill demanded to know why the Plaintiff left work early using FMLA to care for his son on April 27, 2008, and he wanted an answer before the end of the shift on April 29, 2008.

28. On May 12, 2008 while leaving work, Capt. Daniel Swain asked Plaintiff to come into his office to review the evaluation which Plaintiff had completed, containing comments and complaints about the negative impact the Plaintiff's use of the FMLA had upon his career. Capt. Swain told the Plaintiff that Tammy Padilla, the only other Correctional Officer to make such comments had been fired for making such comments. Plaintiff understood Capt. Swain's comments to mean that he would be fired if he did not stop making such comments and complaints.

29. On June 8, 2008 the Plaintiff tore a ligament in his right ankle and called Defendant employer requesting FMLA leave. Thereafter by June 14, 2008 the Plaintiff exhausted all his earned sick leave and requested that vacation, personal, and compensation leave be substituted for qualified FMLA. The Defendant, in violation of the FMLA statute, refused to permit the Plaintiff to use such other accrued leave with the result that Defendant Baltimore County unlawfully deducted money from Plaintiff's paycheck.

30. Although the Plaintiff applied for promotion to Corporal on many occasions, he was not promoted because of Plaintiff exercise of his substantive rights under the FMLA.

31. Although the Plaintiff applied for promotion to Corporal on many occasions, the Plaintiff was not promoted to the Corporal position in retaliation for filing FMLA complaints with the U.S. Department of Labor, and in retaliation commenting and complaining about the FMLA to Defendant employer and his

supervisors, as aforesaid.

## COUNT ONE

32. The foregoing paragraphs are incorporated herein.

33. Defendants' actions constitute interference with Plaintiff's substantive rights under FMLA.

34. The foregoing acts are a willful violation of the Family and Medical Leave Act of 1993, and entitle the Plaintiff to recover damages as provided at 29 U.S.C. § 2617.

Wherefore, Plaintiff requests this Court to award him the following relief:

1. That he be awarded compensatory damages in the amount of $300,000;

2. Punitive damages in the amount of $ 500,000.00 against Defendant O'Neill;

3. That he be awarded costs and attorney's fees accrued in this matter; and

4. That he be awarded other and further relief as the court deems just and appropriate.

## COUNT TWO

35. The foregoing paragraphs are incorporated herein.

36. An employer is prohibited from discriminating or retaliating against employees who have used FMLA leave, or otherwise exercised their rights under the FMLA.

37. The foregoing acts are a willful violation of the Family and Medical Leave Act of 1993, and entitle the Plaintiff to recover damages as provided at 29 U.S.C. § 2617.

Wherefore, Plaintiff requests this Court to award him the following relief:

1. That he be awarded compensatory damages in the amount of $300,000;

2. Punitive damages in the amount of $ 500,000.00 against the individual Defendants;

3. That he be awarded costs and attorney's fees accrued in this matter; and

4. That he be awarded other and further relief as the court deems just and appropriate.

_____
John B. Stolarz
6509 York Road
Baltimore, MD 21212
(410) 532-7200

Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

Richard Bosse, Plaintiff, by John B. Stolarz, his attorney, demands a trial by jury.

_____
John B. Stolarz

Attorney for Plaintiff